ESTATE OF BENJAMIN FRANKLIN MCGREW, THIRD NATIONAL BANK IN NASHVILLE, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 102024. Promulgated March 13, 1942.

*Seymour Samuels, Jr., Esq.,* and *James W. Allen, C. P. A.,* for the petitioner.

*John R. Stivers, Esq.,* for the respondent.

624

626

## OPINION.

OPPER: *First issue.*—The burden being upon petitioner to overcome the prima facie correctness of respondent's determination that decedent transferred property in contemplation of his death, as well as under the presumption created by section 302 (c), the Board should have been placed in a position to determine by means of a sufficiently complete description of all relevant facts what was decedent's impelling motive in making the two transfers. Petitioner fell far short of doing this. We do not know the cause of decedent's death, see *Luscomb* v. *Commissioner* (C. C. A., 2d Cir.), 30 Fed. (2d) 818; his age, see *Updike* v. *Commissioner* (C. C. A., 8th Cir.), 88 Fed. (2d) 807, 811; certiorari denied, 301 U. S. 708; or his state of mind when the transfers were made, see *Travelers Bank & Trust Co., Executor*, 29 B. T. A. 88, 95. Even his physical condition at that time is described only as "fairly good" but "he was worried to death over this

lawsuit" and "he never was a strong man." The testimony shows that he was ill within six months of the time of the conveyance but not the nature of this illness.

The single circumstance relied upon to induce us to determine that these transfers were not made in contemplation of death is that decedent had previously intended to transfer the property to his wife and that at the time he feared his creditors might take it. But even this, in the form in which the evidence appears, is about as consistent with the one motive as with the other. The wife testified that "he felt that I needed more land and that the bigger part of his property should have been wiped out, if that happened, that I would have a living, and he wanted me to have it." See *Igleheart* v. *Commissioner* (C. C. A., 5th Cir.), 77 Fed. (2d) 704.

On the other hand, decedent made his will within about two weeks of the transfer. See *Rengstorff* v. *McLaughlin* (Dist. Ct., N. Dist. Calif.), 21 Fed. (2d) 177. His wife was his beneficiary under both. See *Myers* v. *United States* (Ct. Cls.), 2 Fed. Supp. 1000, 1012; certiorari denied, 292 U. S. 629. The deed by which the gift was made was kept in his wife's safe deposit box and not recorded until after decedent's death.

The record, taken as a whole, leaves us far from satisfied that the gift was not brought about by testamentary motives. We have accordingly made the finding that the property was transferred in contemplation of death.

*Second issue.*—Although there may have been a reason for decedent to give his wife the money with which she opened their joint bank account, that is not enough to eliminate the item from decedent's estate. There must have been "consideration", adequate in money or money's worth. The fact that the wife had supplied the husband with funds with which to satisfy his creditors does not constitute consideration unless the advances were a loan, accompanied by the promise that they would be repaid. Absent the evidence of any such promise in express terms, we must be able to find that one was implied. *Fox* v. *Rothensies* (C. C. A., 3d Cir.), 115 Fed. (2d) 42. "Expenditures out of the wife's separate estate made by the husband with her knowledge and consent will not render him liable to account for the same", 21 Cyc. 1431, quoted with approval in *Williams* v. *Williams* (Tenn.), 236 S. W. 926, 930, if the local law on the subject is controlling. But see *Commissioner* v. *Greene* (C. C. A., 9th Cir.), 119 Fed. (2d) 383; certiorari denied, 314 U. S. 641. The relationship of the parties and their attitude and intent respecting the transactions as inferable from their conduct are the controlling factors in ascertaining the existence of any implied promise. See *Williams* v. *Williams, supra.*

No implication that the transaction was a loan necessarily arises merely from the use of the wife's principal or capital, *Fox* v. *Rothensies*, *supra*, nor from the husband's use of the funds for his own personal purposes instead of their joint benefit. *Williams* v. *Williams, supra*. Difficult and obscure questions lurk in the subject but these need not detain us here, for the wife's consent and approval and her attitude toward the financial transactions she had with her husband appear too unmistakably from her own testimony to leave room for any contrary implication. She testified, when explaining the purpose of the joint bank account, "We always lived that way, what I had was his, and what he had was mine, if we needed it   *   *   *." There is no evidence that the wife was promised or expected repayment at the time the creditors were paid, and we are unable to find anything in the record justifying the conclusion that decedent's funds, with which this joint account was opened, were given to the wife to liquidate any such promise or for anything else approaching an adequate and full consideration in money or money's worth. On this issue respondent is sustained.

*Third issue.*—The only evidence relating to the value on the date of decedent's death of certain bonds forming a part of his estate was the inability of the executor to find a purchaser for them or for the stock later received in exchange. The debtor, after a 77–B receivership and reorganization, was still in active business. There is no predicate for any finding that the value of the securities was lower than that fixed by respondent. Petitioner's unsupported determination to that effect does not suffice. *Higginbotham-Bailey-Logan Co.*, 8 B. T. A. 566, 578. Respondent's action on this issue must accordingly be approved.

*Fourth issue.*—It is claimed that insurance on decedent's life, payable to the estate, was in reality transformed by the unusual provision of Tennessee law,[1] into policies for the benefit of decedent's wife, and therefore, as payable to "other beneficiaries", exempt within $40,000 from treatment as part of the estate. Sec. 302 (g). This case is not like *Estate of Frederick G. Proutt*, 41 B. T. A. 1299, for there was no testamentary disposition of the insurance here, and its proceeds went directly to the wife through the executor without the intervention of any trust or other process of administration. It would be entirely comparable with *Commissioner* v. *Jones* (C. C. A., 6th Cir.), 62 Fed. (2d) 496, were it not for respondent's contention that the 1926 amendment to section 302 (a) presents a new problem, a question which the Board expressly reserved in the *Proutt* case.

While there was no authority on the point when this proceeding was presented and briefed, the recent decision of the Sixth Circuit Court of Appeals in *Proutt* v. *Commissioner*, 125 Fed. (2d) 157, reversing *Estate of Frederick G. Proutt, supra*, necessarily and directly passes

---

[1] Tennessee Code (1932), sec. 8456.

upon the question and determines it in favor of petitioner. On the authority of that case, therefore, respondent's determination on this issue is disapproved.

Other questions were eliminated by stipulations of counsel at the hearing. These matters should be taken into account in the recomputation.

*Decision will be entered under Rule 50.*